IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTONIO BARNES,           )
                          )
    Plaintiff,             )
                          )   No. 04 C 5068
    v.                     )
                          )   The Honorable William J. Hibbler
UNITED STATES OF AMERICA,  )
                          )
    Defendant.             )

## MEMORANDUM OPINION AND ORDER

On August 2, 2004, Plaintiff Antonio Barnes brought this action against the United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1). Barnes alleges that while he was being held at the Metropolitan Correctional Center (MCC) pending sentencing, he was attacked and injured by his cellmate. He alleges that prior to the attack, he complained to the proper authorities at the MCC that he was concerned and threatened by his cellmate's violent and disturbing behavior, and requested that either he or his cellmate be relocated. Barnes alleges that his requests were largely ignored by Federal Bureau of Prisons (BOP) employees, and that this inaction was the proximate cause of his injury.

After a bench trial was held before the Court on March 16 and 17, 2009, the Court, having heard and considered all of the evidence, finds as follows:

### FINDINGS OF FACT

1. In 2001, Barnes was held at the MCC in Chicago pending his sentencing for illegal re-entry. Barnes Dep. at 13.

2. During the summer of 2001, Barnes was held in the same cell as a pretrial detainee named Tony Pham. Barnes Dep. at 20.

1

3. Terry Richburg was the correctional counselor for Barnes and Pham in 2001. Tr. at 122-23.

4. Correctional counselors are empowered to move inmates from one cell to another within their housing unit. Tr. at 62 & 120.

5. During the relevant time period, there were no rules dictating when or whether a correctional counselor should make a cell change. Tr. at 120.

6. Barnes complained to Richburg that he wanted Pham moved out of his cell because he was concerned with Pham's odd behavior. Tr. at 125.

7. Richburg asked Pham about Barnes's allegations, and Pham denied them. Tr. at 125.

8. Richburg asked Barnes if he wanted to change cells, and Barnes responded that he did not want to move. Tr. at 125-26.

9. On another occasion, another inmate came to Richburg on Barnes's behalf and asked him to move Pham. Tr. at 127.

10. Besides Barnes's allegations, Richburg heard no complaints about Pham's behavior. Tr. at 123-24.

11. James Diamond was a GS-11 lieutenant at the MCC in the summer of 2001. Tr. at 92.

12. A GS-11 lieutenant has overall responsibility for the function of the MCC, particularly after hours. Tr. at 92. A GS-11 lieutenant has the authority to transfer an inmate to administrative detention. Tr. at 63.

13. After midnight on July 21, 2001, Richburg called Diamond and told him that Barnes wanted to see him. Tr. at 93-94. Barnes had asked Richburg if he could meet with Diamond. Tr. at 128.

14. Diamond met with Barnes and Barnes told Diamond that Pham was practicing martial

2

arts and that Barnes was afraid of Pham. Tr. at 94.

15. Diamond offered to move Barnes to administrative detention and Barnes refused. Tr. at 94-95.

16. Diamond questioned Pham about Barnes's allegations. Pham denied all of the allegations. Tr. at 95.

17. Diamond knew of no other inmate that had seen Pham perform martial arts. Tr. at 95.

18. It is the practice of the BOP to give lieutenants and correctional counselors at the MCC permission to use their judgment when responding to an inmate who requests a change of his housing assignment and states that he fears a cellmate. Tr. at 67.

19. In deciding whether to change an inmate's housing assignment, it is the practice of lieutenants and correctional counselors at the MCC to balance policy considerations such as cultural balance, racial balance, gang balance, the protection of the public, the security of inmates, and the safety of staff members. Tr. at 65-66.

## *CONCLUSIONS OF LAW*

The United States has waived sovereign immunity to suit in limited circumstances through the FTCA. 28 U.S.C. § 1346(b). One of the limits placed on this waiver is the discretionary function exception. *Id.* at § 2680(a). The exception excludes from the waiver of immunity any claim that is

> based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.* The government has the burden of proving that the exception applies. *Stewart v. U.S.*, 199 F.2d 517, 519 (7th Cir. 1952) (citing *Feres v. U.S.*, 340 U.S. 135, 140, 71 S. Ct. 153, 156, 95 L.Ed. 152 (1950)).

3

The parties first argue about how the Court should construe the discretionary function exception given its situation within § 2680(a) as a whole. Second, they dispute whether the facts of this case satisfy the two-prong test courts utilize in order to determine whether the exception applies.

## I. Construing the discretionary function exception within § 2680(a) as a whole

The discretionary function exception is found in the second half of § 2680(a). In its entirety, the section limits the waiver of immunity by excepting:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The United States argues that because the statute is phrased in the disjunctive, the presence of the due care exception has no limiting effect on the application of the discretionary function exception. Barnes disagrees. He contends that in any situation where a federal agency or employee is executing a statute or regulation, the only portion of § 2680(a) that is potentially applicable is the due care exception. Although Barnes does not make it clear, according to his construction, the discretionary function exception is presumably applicable only in situations where a federal agency or employee acts in the absence of a statute or regulation.

For support of its position, the United States cites *Lively v. U.S.*, 870 F.2d 296, 297-98 (5th Cir. 1989). In *Lively*, the court rejected the plaintiffs' assertion that the requirement of due care applied to all of § 2680(a), holding that the section sets forth two distinct exceptions separated by the section's disjunctive phrasing. *Id.* The court's focus on the existence of two separate exceptions is relevant to the inquiry here, but it is not directly on point. Barnes does not

dispute that there are two exceptions contained within § 2680(a), nor does he argue that the due care standard applies to both. Instead, he argues that the first exception is the only one that may apply in a case involving the execution of a statute or regulation.

However, this argument does not stand up against Seventh Circuit precedent. Courts have not hesitated to find that federal agencies and employees may exercise or perform discretionary functions and duties within the meaning of § 2680(a) even when they are executing a statute or regulation. This should not be surprising given that federal agencies and employees rarely operate in the absence of statutory or regulatory guidance, if ever. For instance, in *Calderon v. U.S.*, 123 F.3d 947, 950 (7th Cir. 1997), the court agreed with the plaintiff that 18 U.S.C. § 4042 establishes a mandatory duty of care for BOP personnel to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." The court continued, however, holding that § 4042, a statute that applies in this case and that Barnes also cites for support, provides BOP personnel with discretion because it does not "direct the manner by which the BOP must fulfill this duty." 123 F.3d at 950. In the end, the *Calderon* court held that the discretionary function exception did apply in that case, despite the fact that the BOP personnel were executing a mandatory duty set forth in a statute. *Id.* at 951. Thus, the first half of § 2680(a) provides immunity from suit when employees execute statutes or regulations with due care, regardless of the law's validity. The second half of the section provides immunity from suit when employees exercise discretion, regardless of whether they abuse that discretion, and regardless of whether they do so pursuant to a statute or regulation.

II. **Two-prong test under the discretionary function exception**

Having established that the discretionary function exception can apply in situations

5

involving the execution of statutes and regulations, the Court must next address whether the exception applies in the instant case. Courts have set forth two requirements that the government must prove in order for the exception to apply: "(1) the action complained of must involve an element of judgment or choice; and (2) the action must relate to considerations of public policy." *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (citing *U.S. v. Gaubert*, 499 U.S. 315, 322-23, 111 S. Ct. 1267, 1273-74, 113 L. Ed. 2d 335 (1991)). The parties disagree on both issues.

### A. An element of judgment or choice

The first prong of the test is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." Barnes argues that the actions of BOP personnel were subject to specific mandates in this case, and that the discretionary function exception is thus inapplicable.

At the statutory level, Barnes argues correctly that 18 U.S.C. § 4042 imposed a mandatory duty on BOP employees to provide for his safekeeping and care while at the MCC. However, as discussed above, the mandate contained in § 4042 is expansive and fails to provide specific direction to those who are subject to it. *Calderon*, 123 F.3d at 949. Thus, § 4042 did not deprive BOP employees of an element of judgment or choice.

Barnes is unable to point to any BOP policy that guides personnel in granting or denying inmates' requests for cell changes. However, Barnes does argue that Chapter 11 of the BOP Program Statement 1380.05 (reprinted in Joint Tr. Ex. 2, at BOP 305-09), entitled Protective Custody Cases, applies to the BOP's investigation into whether to place Barnes in protective custody. The program statement indicates that "[i]nmates about whom staff have good reason to

6

believe the inmate may be in serious danger" qualify as "potential protection cases." *Id.* at § 1101 (BOP 305). In addition, it requires BOP personnel to conduct investigations regarding protective custody cases, and to document the results of these investigations in detail. *See id.* at §1102 (BOP 305-06). He argues, therefore, that at the very least, the BOP's alleged failure to document any investigation in this case removes the case from the exception.

The government argues that the provisions of Chapter 11 do not apply in this case, but instead describe investigations that must take place after an inmate has already been placed in protective custody. *See id.* at § 1102 (BOP 305-06). This may be the case since the provisions of Chapter 11 requiring investigations apply to a "protective custody inmate," who is defined as "an inmate *who has been placed* in administrative detention for protection at his/her request or upon staff determination that the inmate needs protection." *Id.* at § 1101 (BOP 305) (emphasis added). The Court need not decide this issue of interpretation, however, because the Court concludes that Barnes suffered no damages as a result of any failure by BOP personnel to document their investigation of Barnes's complaints.

Instead, the pertinent issue in this case is whether BOP personnel had discretion regarding the decision of whether or not to move Barnes into protective custody. The provisions guiding an inmates' placement in administrative detention for any number of reasons, including protection, are found at BOP Program Statement 5270.07, §§ 541.22-541.23 (reprinted in Joint Tr. Ex. 2, at BOP 309-17). This statement provides that the warden or a designated lieutenant

> *may*...place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate...[r]equests admission to administrative detention for the inmate's own protection, or staff determines that admission to or continuation in administrative detention is necessary for the inmate's own protection.

7

*Id.* at § 541.22 (BOP 309) (emphasis added) (internal citation omitted). Through its use of the term "may," the statement makes clear that the decision to place an inmate in administrative detention does involve an element of judgment or choice. The Court's findings of fact regarding the BOP's practice concerning such decisions support this conclusion. Barnes has not provided a statute, regulation, or policy providing otherwise.

## B. Considerations of public policy

The Court must next consider whether BOP personnel's decision not to move Barnes or Pham related to considerations of public policy. By engaging in this inquiry, the Court fulfills the discretionary function exception's purpose, which is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814, 104 S. Ct. 2755, 2765, 81 L. Ed. 2d 660 (1984) (hereinafter *Varig Airlines*). When, as here, "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S. Ct. at 1274. In order to defeat this presumption, Barnes must show that the actions or omissions of BOP personnel in his case "are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* at 324-25, 111 S. Ct. at 1275.

Barnes attempts to use the testimony of Richburg and Diamond to show that they did not actually balance objectives and consider policy in implementing their decisions. However, the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325, 111 S. Ct. at 1275. In addition, Barnes points to

8

testimony from MCC Warden Graber that low-level BOP personnel are not responsible for making policy, but for following it. But, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig Airlines*, 467 U.S. at 813, 104 S. Ct. at 2764. In this case, the witness testimony, and the statute and policy guiding Richburg and Diamond make clear that they were expected to use discretion in making the decision of whether or not to move Barnes or Pham.

Of course, the second prong of the test would be meaningless if all actions taken by employees that were not specifically directed by law or policy were necessarily "susceptible to policy analysis." Indeed, courts have given examples of the types of actions that do not satisfy the second prong. For instance, in *Gaubert*, the Court pointed out that the exception would not apply to an employee driving an automobile on a mission related to his official duties, even though driving requires the constant exercise of discretion, because "decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." 499 U.S. at 325 n.7, 111 S. Ct. 1275 n.7. However, the BOP's decision not to move an inmate following reports of some threatening activity is a very different type of decision than those required of an employee while driving. In fact, courts have repeatedly held that these sorts of decisions are subject to the discretionary function exception. *See, e.g., Calderon*, 123 F.3d at 950-51 (rejecting the argument that "policy judgment is not involved in day to day, hour to hour, minute to minute actions of correctional officers in patrolling the cell blocks of a prison"); *Montez ex rel. Estate of Hearlson v. U.S.*, 359 F.3d 392, 399 (6th Cir. 2004).

Barnes points out that in *Montez*, the Sixth Circuit recognized that an inmate could possibly rebut the presumption set forth in *Gaubert* by showing the "existence of a specific and immediate threat against an inmate" because decisions by prison officials to ignore such threats

"are less likely to be the type of decision that can be said to be grounded in the underlying policy of the BOP, which requires prison officials to provide for the safekeeping and protection of inmates." *Id.* at 398 (citing 18 U.S.C. § 4042(a)). In order to illustrate this point, the *Montez* court provided the example of the factual situation in *United States v. Muniz*, 374 U.S. 150, 152, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963), "where a prison guard stood by while an inmate was chased and severely beaten by 12 other inmates." *Montez*, 359 F.3d at 398. Certainly, the decisions at issue in this case cannot be compared to the guard's failure to act in *Muniz*.

*Palay v. United States*, 349 F.3d 418 (7th Cir. 2003), also supports the conclusion that the decisions at question in this case involved considerations of public policy. The court in *Palay* actually reversed the district court's dismissal of an inmate's claim that the negligence of BOP employees at the MCC led to his injury in a gang altercation. *Id.* at 429-32. However, the court first recognized the strong possibility that the discretionary function exception might apply in that case. *Id.* The court ruled that it could not apply the exception at the pleading stage, however. *Id.* The court pointed out that the complaint did not indicate whether the plaintiff's injury was the result of the employee's decisions regarding housing inmates, or just because a guard fell asleep on the job, for example. *Id.* at 432. It did not even make clear whether the BOP employees were acting in direct contravention to BOP policy or regulations. *Id.* 430-31. In this case it is clear that Barnes alleges that his injury was the result of the decision not to move him or Pham. The Court has also made findings of fact and conclusions of law regarding the discretion afforded BOP employees in this instance. Thus, the instant case is clearly distinguishable from *Palay*.

For all of the above reasons the Court finds that the discretionary function exception applies in this case, and that the government is therefore immune from liability. Thus, the Court

10

need not make any further finds of fact, nor address Barnes's alleged injury.

## *JUDGMENT*

The Court enters judgment in favor of the defendant, the United States of America.

IT IS SO ORDERED.

9/24/09
Dated

Hon. William J. Hibbler
United States District Court